# EXHIBIT A

Electronically FILED by Superior Court of California, County of Los Angeles on 03/26/2019 09:48 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Barel, Deputy Clerk

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
RENT THE RUNWAY, INC.; and DOES 1 through 100, inclusive

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
FASHIONPASS, INC.

FOR COURT USE ONLY
*(SOLO PARA USO DE LA CORTE)*

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte lo podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* SUPERIOR COURT OF THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES
111 N. Hill Street, Los Angeles, CA 90212

CASE NUMBER:
*(Número del Caso):*
**19STCV10151**

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
George Cooper Rudolph, Esq., 19800 MacArthur Blvd., Ste. 860, Irvine, CA 92612-2493; 949.640.9900

DATE: 03/26/2019
*(Fecha)*

Sherri R. Carter Executive Officer / Clerk of Court
Clerk, by Marita P. Barel , Deputy
*(Secretario)* *(Adjunto)*

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☒ on behalf of *(specify):* Rent The Runway, Inc.

   under: ☒ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

Case 2:19-cv-03537-GW-JC Document 1-1 Filed 04/29/19 Page 3 of 16 Page ID #:9
19STCV10151
Assigned for all purposes to: Stanley Mosk Courthouse, Judicial Officer: David Sotelo

Electronically FILED by Superior Court of California, County of Los Angeles on 03/26/2019 09:48 AM Sherri R. Carter, Executive Officer/Clerk of Court, by M. Baret, Deputy C

George Cooper Rudolph, Esq. (State Bar No. 72470)
Deanna Mayer Voziyan, Esq. (State Bar No. 217361)
**GEORGE C. RUDOLPH**
**A Professional Corporation**
19800 MacArthur Blvd., Suite 860
Irvine, CA 92612-2493
Telephone No.: 949.640.9900
E-Mail: george@rudolphlawgroup.com
        deanna@rudolphlawgroup.com

Attorneys for Plaintiff FASHIONPASS, INC.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

### COUNTY OF LOS ANGELES

### STANLEY MOSK COURTHOUSE

| | |
|---|---|
| FASHIONPASS, INC., <br><br> Plaintiff, <br><br> vs. <br><br> RENT THE RUNWAY, INC.; and DOES 1 through 100, inclusive, <br><br> Defendants. | CASE NO. <br><br> **COMPLAINT FOR:** <br><br> (1) **VIOLATIONS OF THE CARTWRIGHT ACT;** <br><br> (2) **UNFAIR COMPETITION;** <br><br> (3) **INTENTIONAL INTERFERENCE WITH CONTRACT;** and <br><br> (4) **INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE** |

Plaintiff FASHIONPASS, INC. (FashionPass) alleges:

**INTRODUCTORY AND GENERAL ALLEGATIONS**

A. **Summary of the Action**

1. FashionPass, a relatively new and vibrantly growing company in the fashion rental business, brings this action to redress the intentional, anti-competitive and monopolistic conduct of Defendant Rent the Runway, which is currently the dominant player in the expanding fashion rental business. Since its founding in 2016, FashionPass has achieved strong and steady growth and has become a showcase retailer in the fashion rental business, as a result of its substantial and strategic

1
COMPLAINT

investment of capital, its fashion, design, and marketing acumen, and its technological capabilities. Confronted with the considerable growth and success of FashionPass, Rent the Runway embarked upon a wrongful, anti-competitive scheme and conspiracy to eliminate competition from FashionPass, rather than fairly competing against FashionPass in the marketplace based upon matters important and beneficial to consumers. Specifically, Rent the Runway is exerting its superior market power and financial capabilities to coerce FashionPass's top suppliers to refuse to sell merchandise to FashionPass, and is thereby attempting to eliminate competition from FashionPass.

2. As is alleged herein, FashionPass has suffered, and will continue to suffer, damages as a result of Rent the Runway's monopolistic and anti-competitive conduct. As important, consumers in the fashion rental business are damaged by Rent the Runway's illegal practices, which limit the consumers' choices regarding accessibility, price, selection, service, and subscription terms. Thus, through this action, FashionPass requests the Court to issue relief to curtail and prevent Rent the Runway's monopolistic and anti-competitive practices, which harm both FashionPass and consumers. FashionPass further requests the Court to award it compensatory and punitive damages for the harm that FashionPass has suffered as a consequence of Rent the Runway's illegal conduct.

**B. The Parties**

3. FashionPass is, and at all material times was, a corporation duly formed and existing pursuant to, and in accordance with, the laws of the State of California, having its principal place of business in Los Angeles County, California.

4. Defendant RENT THE RUNWAY, INC. (RTR) is, and at all material times was, a Delaware corporation, having its principal place of business in New York, New York, and its primary place of business in California located in Woodland Hills, Los Angeles County, California.

5. RTR registered and qualified to conduct business in California, on November 22, 2016; and RTR has continuously conducted business in California since no later than that date. Currently, RTR has permanent physical places of business in California at Woodland Hills and San Francisco. Further, RTR purchases products for its business in California, and conducts extensive e-commerce with customers throughout California.

6. The true names and capacities of the Defendants named herein as DOES 1 through 100, inclusive, are unknown to FashionPass, which therefore sues said Defendants by such fictitious names. FashionPass will amend this Complaint to show the true names and capacities of each of said Defendants, when the same have been ascertained.

7. FashionPass is informed and believes, and upon such information and belief alleges, that at all times material, each of DOES 1 through 100, inclusive, was the co-conspirator and/or agent of RTR; and, in connection with the acts herein alleged, each of DOES 1 through 100 was acting within the scope of such conspiracy and/or agency, and with the knowledge, authorization and consent of RTR, which thereafter ratified each and every act, omission, and wrongdoing committed by each of DOES 1 through 100. In each instance alleged in this Complaint, Does 1 through 100, and each of them, acted in pursuit of the trust alleged herein below, and aided, and assisted in carrying out the purposes of that trust.

C. **The Fashion Rental Business**

8. FashionPass and RTR are both engaged in business, in the segment of the fashion industry that provides women's clothing and accessory rentals (the Fashion Rental Business). Both FashionPass and RTR are involved in extensive e-commerce, providing the majority of their clothing and accessory rentals through on-line, Internet sites.

9. Merchants in the Fashion Rental Business (collectively Fashion Rental Companies, and each a Fashion Rental Company), like FashionPass and RTR, allow customers to rent clothing and accessories for special events, work, and casual, through subscriptions that allow the customer to rent designer and sought-after brand clothing, and to then return the items to the Fashion Rental Company, which professionally cleans the items and make them available for others to rent.

10. For customers, who represent end consumers, the fashion rental service empowers them to wear a variety of fashions from sought-after brands assembled by fashion and style experts, through a time-efficient mechanism that permits customers to expedite the selection of items, without the expense of purchasing a new wardrobe with each new season, and without concern about size changes. Subscribers in the Fashion Rental Business are able to always wear fashion that reflects current trends from their favorite brands and designers, at a fraction of the cost of buying

the clothing and with relatively minimal time expended shopping.

11. There are few barriers to enter the Fashion Rental Business. Those barriers that exist include (a) fashion and design acumen, and knowledge of the fashion industry; (b) capital sufficient to acquire merchandise and the infrastructure required to stock, display, and ship inventory; and (c) technological sophistication of website design and function. Importantly, in the absence of the kind of wrongful, anti-competitive conduct committed by the RTR and DOES 1 through 100 (collectively, Defendants), as alleged herein, manufacturers supplying garments at wholesale to retail merchants in the fashion industry do not distinguish between Fashion Rental Companies and traditional retail sellers, and place no restrictions upon purchases by Fashion Rental Companies.

12. Generally, Fashion Rental Companies are distinguished among one another in the marketplace by the kinds of fashion offered, the brands they carry, the terms of rental, exchange and return of items, and cost. Further, while some Fashion Rental Companies offer just clothing or just accessories, others offer both clothing and accessories. In the absence of anti-competitive conduct, the Fashion Rental Business benefits consumers through competition among a variety of Fashion Rental Companies that compete based upon the terms of subscription and the types of merchandise offered.

13. FashionPass conducts its business exclusively through its online site, "thefashionpass.com." FashionPass offers clothing and accessories that particularly concentrate on styles designed for women in their 20s and 30s, who wish to wear clothing and accessories that reflect current trends from sought-after brands. FashionPass carries a selection of brands primarily focused on casual everyday apparel, wedding guest dresses, vacation wear, and work attire.

14. RTR conducts its business through its online site, "renttherunway.com," and through physical stores in 5 different locations, including its 2 stores located in California. RTR offers clothing and accessories that generally appeal to a broader range of customers than FashionPass, but which include FashionPass's target customers; and RTR has historically emphasized high-end, event-based attire, such as dresses for galas and formal events.

15. FashionPass and RTR are direct competitors in the Fashion Rental Business with regard to the clothing and accessories that appeal to women in their 20s and 30s.

16. FashionPass and RTR, like other Fashion Rental Companies, purchase merchandise at wholesale from clothing and accessory manufacturers, publicize the availability of the merchandise on their websites, hold those items in inventory for rental, and supply the items to customers in accordance with the customers' selection of items from the website, or in the case of RTR, also from its stores.

17. FashionPass was founded in 2016, as a self-funded start-up. FashionPass has achieved exposure and growth by virtue of the trend-setting styles and popular brands selected and purchased by its buyers, which are reflected on FashionPass's website. In fact, until the wrongdoing committed by RTR and Does 1 through 100, as alleged below, FashionPass experienced exceptional growth because of, among other things, its ability to identify, select, and showcase on its web site clothing and accessories from the brands most popular with its target clientele.

18. The exposure and growth experienced by FashionPass prior to Defendants' anti-competitive conduct, was achieved through substantial capital investment by FashionPass in, among other things, (a) developing the infrastructure required to stock, display, and ship inventory; (b) developing and designing its website and the functionality of that website; (c) technological sophistication of website design and function; (d) acquiring personnel having fashion and design acumen, and knowledge of the fashion industry; and (e) developing relationships with manufacturers and their agents, such as each of the manufacturers identified in Paragraph 25, below.

19. RTR, which advertises that it began business in 2009, was a pioneer in the Fashion Rental Business. RTR is significantly larger, better financed, and better recognized than FashionPass. By reason of its size and financial capabilities, RTR buys and stocks more merchandise than FashionPass for each fashion season, and has the ability to wield anti-competitive clout by virtue of its size and financial capabilities.

20. Fashion Rental Companies, including FashionPass and RTR, like standard women's clothing retailers, purchase merchandise from the manufacturers of those goods, many of whom sell merchandise to Fashion Rental Companies and retail sellers through agents (representatives), who are located in fashion hubs like Los Angeles, New York, and Dallas.

////

21. Fashion Rental Companies, including FashionPass and RTR, like traditional women's clothing retailers, purchase merchandise 3 to 4 months ahead of each season.

22. At the appropriate time prior to each season, Fashion Rental Companies, including FashionPass and RTR, review the season's offerings from manufacturers in person, with the assistance of the manufacturer's employees or representatives. The manufacturer's employees or representatives take notes, reflecting the Fashion Rental Company's tentative purchasing intentions; those notes are turned into a purchase order; and the purchase order is provided to the Fashion Rental Company for revision and final submission. The Fashion Rental Company's submission of a signed, final purchase order to a manufacturer, whether directly or through the manufacturer's representative, creates a contract between the manufacturer and the Fashion Rental Company for the purchase of merchandise upon the terms set forth in the signed purchase order.

## FIRST CAUSE OF ACTION

## FOR VIOLATIONS OF THE CARTWRIGHT ACT

### (Against All Defendants)

23. FashionPass refers to and realleges Paragraphs 1 through 22, inclusive, of the Introductory and General Allegations, as if the same were each here set forth in full.

24. RTR devised a scheme to eliminate competition from FashionPass by using coercive tactics to pressure the manufacturers with which FashionPass conducts business, to refuse to sell merchandise to FashionPass. RTR embarked upon its anti-competitive scheme rather than legitimately competing in the marketplace against FashionPass based upon competitive factors like selection, service, terms of rental, cost, and ease of navigation and functionality of its website, all of which are motivating factors to consumers and benefit consumers through competition among Fashion Rental Companies to gain their business. That is, rather than engaging in fair and open competition with FashionPass, RTR instead conceived its scheme to drive FashionPass out of the market by improperly using its market presence and greater financial capabilities to coerce FashionPass's top suppliers to cease doing business with FashionPass.

25. Specifically, in or around October and November 2018, and continuing thereafter to the present date, RTR, acting on its own and acting through Does 1 through 100, communicated

RTR's demand to various manufacturers that unless the manufacturers grant "an exclusive right to buy" to RTR, and refuse to sell merchandise to FashionPass, RTR would not purchase any merchandise from those manufacturers. The manufacturers to which RTR's coercive threat and demand was communicated include (among others), each and all of the following:

(a) The Jetset Diaries;
(b) Show Me Your Mumu;
(c) Saylor;
(d) Blank NYC;
(e) Flynn Skye;
(f) ASTR the Label;
(g) Dress the Population;
(h) Elliatt;
(i) Finders Keepers;
(j) Yumi Kim;
(k) AGOLDE;
(l) Citizens of Humanity;
(m) Keepsake;
(n) C/MEO;
(o) Fifth Label;
(p) Cleobella;
(q) Sanctuary Clothing;
(r) LIKELY;
(s) Amanda Uprichard; and
(t) Fame and Partners.

26. FashionPass is informed and believes, and upon such information and belief alleges, that Defendants communicated RTR's coercive demands and threats to each of the manufacturers listed in the preceding Paragraph 25, in Los Angeles County, California. Each of those manufacturers are either located in Los Angeles, California, or have showrooms and representatives

in Los Angeles County, California. Furthermore, FashionPass at all times dealt with each of said manufacturers, either directly or through their representatives, in Los Angeles County, California.

27. The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, AGOLDE, Citizens of Humanity, Keepsake, C/MEO, Fifth Label, Cleobella, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners each acceded to RTR's coercive threats, and agreed (a) to designate RTR as their "exclusive" customer in the Fashion Rental Business, and (b) to refuse to sell merchandise to FashionPass.

28. By reason of the agreements RTR entered into with each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, AGOLDE, Citizens of Humanity, Keepsake, C/MEO, Fifth Label, Cleobella, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners a trust was created, within the meaning of *Business & Professions Code* section 16720 to prevent competition, which also constitutes a conspiracy against trade within the meaning of *Business & Professions Code* section 16755, subdivision (a). In fact, this trust and conspiracy against trade prevents competition and substantially undermines consumer's access to a competitive market, as is plainly evidenced by the impact of the trust and conspiracy upon FashionPass's ability to purchase merchandise, as alleged below.

29. Prior to 2019, FashionPass had been regularly buying from Yumi Kim, since no later than August 2016; from The Jetset Diaries, since no later than September 2016; from ASTR the Label, since no later than October 2016; from LIKELY, since no later than May 2017; from Show Me Your Mumu and Saylor, since no later than June 2017; from Amanda Uprichard, since no later than August 2017; from Dress the Population, since no later than October 2017; from Flynn Skye, since no later than February 2018; from Sanctuary Clothing, since no later than April 2018; from Blank NYC and Finders Keepers, since no later than August 2018; and from Elliatt, since no later than September 2018. Rental income generated by FashionPass since August 2016 is substantially comprised of revenues generated from the rental of merchandise purchased from said manufacturers. In fact, this group includes 3 of FashionPass's top 5 revenue generating brands.

30. Beginning in October and November 2018, at Los Angeles County, California, FashionPass sought to purchase merchandise from each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, AGOLDE, Citizens of Humanity, Keepsake, C/MEO, Fifth Label, Cleobella, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners in accordance with the procedure described in Paragraphs 21 and 22, above. In each instance, FashionPass's request to purchase merchandise was rejected upon the stated ground that the manufacturer had granted RTR an exclusive right to purchase merchandise in the Fashion Rental Business.

31. As a direct and proximate result of the wrongdoing of RTR and Does 1 through 100, and each of them, as herein above alleged, FashionPass has suffered injury and damages, and will continue to suffer such injury and damages, in amounts that are not yet fully ascertainable, but which FashionPass is informed and believes to be in excess of $3 million. Pursuant to *Business & Professions Code* section 16750, subdivision (a), FashionPass is entitled to recover 3 times the damages sustained by it, according to proof.

32. FashionPass has been required to engage and employ GEORGE C. RUDOLPH, A Professional Corporation to commence and prosecute this action. Pursuant to *Business & Professions Code* section 16750, subdivision (a), FashionPass is entitled to recover its reasonable attorney fees incurred in connection with the commencement and prosecution of this action.

## SECOND CAUSE OF ACTION
## FOR UNFAIR COMPETITION
### (Against All Defendants)

33. FashionPass refers to and realleges Paragraphs 1 through 22, inclusive, of the Introductory and General Allegations; and Paragraphs 24 through 30, inclusive, of the First Cause of Action, as if the same were each here set forth in full.

34. The wrongful conduct of RTR and Does 1 through 100, and each of them, as herein above alleged, violates *Business and Professions Code* sections 16720, 16722, and 16726.

35. Defendants' violations of *Business and Professions Code* sections 16720, 16722, and 16726, and their conduct in furtherance of those violations, constitute unfair competition within the

meaning and scope of *Business and Professions Code* section 17200.

36. As a direct result of Defendants' violations of *Business and Professions Code* sections 16720, 16722, and 16726, and their conduct in furtherance of those violations, FashionPass has lost revenue and profits, and has thereby suffered injury in fact. Accordingly, FashionPass is authorized and entitled to maintain this action, pursuant to *Business & Professions Code* section 17204.

37. FashionPass is informed and believes, and upon such information and belief alleges, that in the absence of injunctive relief against RTR and Does 1 through 100, and each of them, pursuant to *Business & Professions Code* section 17203, RTR and Does 1 through 100, and each of them, will continue their unlawful and unfair business practices.

38. Pursuant to *Business & Professions Code* section 17203, FashionPass is entitled to such judgment and orders of this Court as are necessary and appropriate to restore to FashionPass the profits it lost by reason of Defendants' wrongdoing, together with prejudgment interest thereon, at the legal rate of 10% per annum, according to proof.

## THIRD CAUSE OF ACTION

## FOR INTENTIONAL INTERFERENCE WITH CONTRACT

### (Against All Defendants)

39. FashionPass refers to and realleges Paragraphs 1 through 22, inclusive, of the Introductory and General Allegations; and Paragraphs 24 through 29, inclusive, of the First Cause of Action, as if the same were each here set forth in full.

40. On or about August 9, 2018, FashionPass entered into a contract with Blank NYC to purchase merchandise from Blank NYC. This contract is memorialized by Purchase Order No. 5754066, which was placed with Blank NYC in Los Angeles County, California, and was accepted by Blank NYC in Los Angeles County, California.

41. On or about September 27, 2018, FashionPass entered into two contracts with Elliatt to purchase merchandise from Elliatt. These two contracts are memorialized by Purchase Orders No. 35030668-2 and 35030668-3, which were placed with Elliatt in Los Angeles County, California, and were accepted by Elliatt in Los Angeles County, California.

42. On or about October 10, 2018, FashionPass entered into two contracts with Flynn Skye to purchase merchandise from Flynn Skye. These two contracts are memorialized by Purchase Orders No. 6096082 and 6096083, which were placed with Flynn Skye in Los Angeles County, California, and were accepted by Flynn Skye in Los Angeles County, California.

43. On or about October 19, 2018, FashionPass entered into two contracts with ASTR the Label to purchase merchandise from ASTR the Label. These two contracts are memorialized by Purchase Orders No. 35582032-1 and 35582032-2, which were placed with ASTR the Label in Los Angeles County, California, and were accepted by ASTR the Label in Los Angeles County, California.

44. On or about October 30, 2018, FashionPass entered into two contracts with Yumi Kim to purchase merchandise from Yumi Kim. These two contracts are memorialized by Purchase Orders No. 36037478-1 and 36037478-2, which were placed with Yumi Kim in Los Angeles County, California, and were accepted by Yumi Kim in Los Angeles County, California.

45. FashionPass is informed and believes, and upon such information and belief alleges, that RTR and Does 1 through 100, and each of them, had actual knowledge of each of the contracts alleged in the preceding Paragraphs 40 through 44, inclusive.

46. FashionPass is informed and believes, and upon such information and belief alleges, that RTR and Does 1 through 100, and each of them, intended to cause the manufacturer to breach and cancel each of said contracts by and through RTR's insistence that each of Blank NYC, Elliatt, Flynn Skye, ASTR the Label, and Yumi Kim refuse to sell merchandise to FashionPass.

47. As a result of the demands of RTR and Does 1 through 100, and in conformance with their scheme and conspiracy to prevent FashionPass from effectively competing in the market against RTR, Blank NYC, Elliatt, Flynn Skye, ASTR the Label, and Yumi Kim breached and cancelled each of the contracts identified in Paragraphs 40 through 44, above.

48. As a direct and proximate result of the breach and cancellation of said contracts, which was induced by RTR and Does 1 through 100, and each of them, FashionPass has suffered injury and damages, and will continue to suffer such injury and damages, in amounts that are not yet fully ascertainable, but which FashionPass is informed and believes to be in excess of

$200,000.00.

49. In committing the above alleged wrongdoing, RTR and Does 1 through 100, and each of them, acted intentionally, willfully, maliciously, oppressively, fraudulently, and in conscious and despicable disregard of FashionPass's known rights. By reason thereof, FashionPass is entitled to recover from RTR and Does 1 through 100 punitive and exemplary damages, pursuant to *Civil Code* section 3294.

## FOURTH CAUSE OF ACTION
## FOR INTENTIONAL INTERFERENCE WITH
## PROSPECTIVE ECONOMIC ADVANTAGE
### (Against All Defendants)

50. FashionPass refers to and realleges Paragraphs 1 through 22, inclusive, of the Introductory and General Allegations; and Paragraphs 24 through 30, inclusive, of the First Cause of Action, as if the same were each here set forth in full.

51. FashionPass and each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners were in an economic relationship that would have resulted in a significant economic benefit to FashionPass but for the wrongdoing of RTR and Does 1 through 100, as alleged herein.

52. RTR and Does 1 through 100, and each of them, had full and actual knowledge of the economic relationship between FashionPass and each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners.

53. RTR and Does 1 through 100, and each of them, intentionally interfered with the economic relationship between FashionPass and each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners, as is more particularly alleged in Paragraphs 25 through 27, above.

54. In committing the wrongful conduct, as alleged above, RTR and Does 1 through 100,

12
COMPLAINT


and each of them, intended to interfere with and disrupt the relationships between FashionPass and each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners; and RTR and Does 1 through 100, and each of them, further intended to thereby cause injury and damage to FashionPass.

55. As a direct and proximate result of the wrongful conduct of RTR and Does 1 through 100, the relationships between FashionPass and each of The Jetset Diaries, Show Me Your Mumu, Saylor, Blank NYC, Flynn Skye, ASTR the Label, Dress the Population, Elliatt, Finders Keepers, Yumi Kim, Sanctuary Clothing, LIKELY, Amanda Uprichard, and Fame and Partners were disrupted, each of said manufacturers refused to sell merchandise to FashionPass, and FashionPass has suffered, and will continue to suffer, monetary damages in amounts that are not yet fully ascertainable, but which FashionPass is informed and believes to be in excess of $3 million, representing the profits FashionPass would have gained from its relationships with these manufacturers, but for the wrongdoing of RTR and Does 1 through 100, and each of them.

56. In committing the above alleged wrongdoing, RTR and Does 1 through 100, and each of them, acted intentionally, willfully, maliciously, oppressively, fraudulently, and in conscious and despicable disregard of FashionPass's known rights. By reason thereof, FashionPass is entitled to recover from RTR and Does 1 through 100 punitive and exemplary damages, pursuant to *Civil Code* section 3294.

**WHEREFORE,** FashionPass prays for judgment, as follows:

1. **On the First Cause of Action**, against all Defendants, for relief under *Business & Professions Code* section 16750, including (without limitation),

    (a) For treble damages, according to proof; and

    (b) For FashionPass's reasonable attorney fees, according to proof.

2. **On the Second Cause of Action**, against all Defendants, for relief under *Business & Professions Code* section 17203, including (without limitation),

    (a) Injunctive relief; and

    (b) Restitution and recovery of all profits lost by FashionPass by reason

of Defendants' unfair competition, together with interest thereon, at the legal rate of 10% per annum, according to proof.

    3.    **On the Third Cause of Action**, against all Defendants,

        (a)    For compensatory damages, according to proof; and

        (b)    For punitive and exemplary damages, according to proof.

    4.    **On the Fourth Cause of Action**, against all Defendants,

        (a)    For compensatory damages, according to proof; and

        (b)    For punitive and exemplary damages, according to proof.

    5.    **On All Causes of Action**, for

        (a)    FashionPass's costs incurred herein; and

        (b)    Such other and further relief as the Court deems just and proper.

Dated: March 26, 2019.        GEORGE C. RUDOLPH
A Professional Corporation

By: _____
George Cooper Rudolph, Esq.